IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**BILLY HENSON**                                                                                      **PETITIONER**

VS.                              **CASE NO. 5:06CV00298 JLH/HDY**

**LARRY NORRIS, Director of the**
**Arkansas Department of Correction**                                          **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District

>   Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.
>
> 3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

**DISPOSITION**

Now before the Court is the application for writ of habeas corpus pursuant to 28 U.S.C. §2254 of Billy Henson, an inmate in the custody of the Arkansas Department of Correction (ADC). Mr. Henson was found guilty of theft by receiving following a December 2004 jury trial in the Circuit Court of Pulaski County. Petitioner was sentenced as an habitual offender to a term of two hundred forty months of imprisonment. Mr. Henson unsuccessfully appealed the conviction, challenging the sufficiency of the evidence and arguing that the trial court erred in denying him the right to testify on his own behalf. *Henson v. State*, 94 Ark. App. 163 (2006). Mr. Henson next filed a petition for postconviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. The trial court denied Rule 37 relief, citing the petitioner's failure to comply with the requirements of Rule 37.1. Petitioner appealed, and the Arkansas Supreme Court affirmed the trial court in a *per*

*curiam* decision dated November 9, 2006.

In the petition now before the Court, the following grounds for relief are advanced:

1. The trial court erred in finding that the evidence was sufficient;

2. The trial court erred in denying petitioner the right to testify in his own behalf;

3. Ineffective assistance of counsel for failing to move for a dismissal based upon a speedy trial violation;

4. Ineffective assistance of counsel for failure to preserve for appeal the issue of whether petitioner acted with a knowing mental state; and

5. Ineffective assistance of counsel for failing to call witnesses to testify on petitioner's behalf due to the cost of the defense.

The respondent contends that grounds three, four, and five are not properly before this Court due to the petitioner's failure to adequately raise the grounds in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny. By previous Court Order Mr. Henson was notified that these grounds might be barred from consideration. Mr. Henson was invited to explain why the grounds should not be dismissed, and he has filed a responsive pleading. We will first address whether grounds three, four, and five are properly before this Court, and then consider the merits of all claims ripe for adjudication.

In *Wainwright v. Sykes, supra*, the United States Supreme Court held that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court: that is, if he was aware of the ground, but failed to pursue it to a final determination. The exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure. *See, also, Clark v. Wood*, 823 F.2d l24l, l250-5l (8th Cir.

l987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. l987). The *Wainwright v. Sykes* cause and prejudice test was clarified by two subsequent Supreme Court decisions, *Smith v. Murray*, 477 U.S. 527 (l986), and *Murray v. Carrier*, 477 U.S. 478 (l986).

With respect to cause, these cases explain that the Court has "declined in the past to essay a comprehensive catalog of the circumstances that [will] justify a finding of cause." *Smith v. Murray*, 477 U.S. 533-34. However, one can discern from these cases several circumstances in which cause might be found: first, where some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules, *see Murray v. Carrier*, 477 U.S. at 488; second, where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, *see Reed v. Ross*, 468 U.S. 1 (l984); or third, if the litigant failed to receive the effective assistance of counsel. *See Murray v. Carrier*, 477 U.S. at 488. In addition, there is one extraordinary circumstance where a federal habeas court may grant relief without a showing of cause: where a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Id.* at 496.

In his responsive pleading (docket entry no. 8), Mr. Henson simply reiterates his faith in the merits of claims three, four, and five. While he notes that actual innocence would excuse his failure to properly advance these claims in state court, he does not offer any new or reliable evidence of his innocence, as required by *Schlup v. Delo*, 513 U.S. 298, 324 (1995). He does offer two arguments which amount to claims that he was impeded in his efforts to comply with state procedural rules: (1) his Rule 37 petition should not have been dismissed because of Henson's *pro se* status and the difficulty in complying with state court procedural rules; and (2) the trial court erred in not allowing him to refile his Rule 37 petition. These are the same arguments advanced by Mr. Henson in his

state court appeal of the Rule 37 denial. The Arkansas Supreme Court ably set out the facts surrounding these claims, and ruled as follows:

> The Arkansas Court of Appeals affirmed a judgment that found appellant Billy Joe Henson guilty of theft by receiving and sentenced him to twenty years' imprisonment as a habitual offender. *Henson v. State,* ---Ark.App. ----, --- S.W.3d ---- (Feb. 8, 2006). The mandate issued on February 28, 2006. On March 7, 2006, appellant timely filed in the trial court a petition for postconviction relief under Ark. R.Crim. P. 37.1. By order entered March 22, 2006, the trial court dismissed that petition for failure to comply with Rule 37.1. [footnote omitted].
>
> Appellant filed a notice of appeal of that order on March 29, 2006. On April 14, 2006, appellant filed in the trial court a "motion for rehearing" and a new postconviction relief petition under Rule 37. 1. No order addressing the motion or the new petition appear in the record. We note that, at the time the motion and second petition were filed, appellant had already filed notice of appeal. Now before us is appellant's appeal of the March 22, 2006, order dismissing his petition under Rule 37.1.
>
> Appellant raises two points on appeal. He contends first that the trial court erred in dismissing his petition, and, second, that the trial court erred in not permitting him to resubmit his petition. Appellant argues that he was hampered in his preparation of his petition in that he did not have sufficient time to review all issues and in that he was not represented by counsel and should not be held to the same standards as an attorney. He cites to the federal rules of civil procedure, and asserts that his filing of the petition was compliance with our own rules of procedure, that he is actually innocent, and that failure to consider the claims in his petition would be a miscarriage of justice. In support of his second point, appellant references his motion, and argues that he still had time in which to file a compliant petition and that the trial court failed to make adequate findings of fact in its order and should have provided him with a hearing. He contends that to deprive him of a postconviction remedy is fundamentally unfair.
>
> This court does not reverse a denial of postconviction relief unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Greene v. State,* 356 Ark. 59, 146 S.W.3d 871 (2004). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Flores v. State,* 350 Ark. 198, 85 S.W.3d 896 (2002). If the trial court finds the petition, files and records of a case conclusively show that the petitioner is not entitled to relief, Ark. R.Crim. P. 37.3(a) requires the court to make written findings specifying the parts of the

record relied upon to sustain those findings. Here, the trial court found the petition was not compliant with Ark. R.Crim. P. 37.1.

The trial court sufficiently referenced the petition as that part of the record relied upon. Despite appellant's assertion to the contrary, his petition clearly did not comply with our Rule 37. 1, in that it exceeded the limitations set for lines per page, words per line, and margins. Rule 37.1(b) permits either the circuit court or the appellate court to dismiss any petition that fails to comply with those requirements. The trial court's findings on this point were not clearly erroneous.

[1]As to appellant's contention that our procedural rule is fundamentally unfair and violates due process, this court has consistently held that due process does not require courts to provide an unlimited opportunity to present postconviction claims or prevent a court from setting restrictions upon the presentation of that claim. *See Sanders v. State,* 352 Ark. 16, 98 S.W.3d 35 (2003); *Rowbottom v. State,* 341 Ark. 33, 13 S.W.3d 904 (2000); *Washington v. State,* 308 Ark. 322, 823 S.W.2d 900 (1992) *(per curiam).* The restrictions in Rule 37.1 placed upon lines per page, words per line and margins require little more than an ability to count and measure with a ruler. Those restrictions are neither burdensome, unduly time-consuming, nor unreasonable.

[2] Appellant's argument that he was unable to comply with our procedure because he was not represented by counsel also fails. All litigants, including those who proceed *pro se,* must bear responsibility for conforming to the rules of procedure or demonstrating a good cause for not doing so. *Peterson v. State,* 289 Ark. 452, 711 S.W.2d 830 (1986) *(per curiam); Walker v. State,* 283 Ark. 339, 676 S.W.2d 460 (1984) *(per curiam); Thompson v. State,* 280 Ark. 163, 655 S.W.2d 424 (1983) *(per curiam). See also Tarry v. State,* 353 Ark. 158, 114 S.W.3d 161 (2003) *(per curiam).* Appellant has not stated good cause for his failure to comply.

[3] Nor does appellant's claim of actual innocence provide an exception to our rules of procedure. The cases cited by appellant on this issue do not appear to have any relevance or any application to his argument, and certainly do not support his argument. A claim of actual innocence is in essence a challenge to the sufficiency of the evidence, and, as a direct attack on the verdict, is not cognizable in postconviction relief proceedings. We do not permit an appellant to rechallenge the sufficiency of the evidence at trial in a postconviction proceeding. *Johnson v. State,* 321 Ark. 117, 900 S.W.2d 940 (1995).

[4] Appellant's last point is that the trial court erred in not permitting him to submit another petition to cure the deficiencies. Rule 37.1(b) does not require that a non-compliant petition be dismissed by the circuit court without prejudice.

> Subsection (b), in fact, specifically allows this court to dismiss on appeal where a petition failed to comply with that subsection, a situation in which it is clear no opportunity to cure is contemplated. There was no error in the order entered.
>
> The trial court could not have appropriately considered appellant's motion for rehearing or the second tendered petition. The trial court was not permitted under Ark. R.Crim. P. 37.2(d) to consider a petition for rehearing. The second petition was non-compliant with Rule 37.1, as the State correctly notes, in that it exceeded the ten-page limitation and did not include the required affidavit verifying the petition.
>
> We hold that the trial court's findings were not clearly erroneous and find no reversible error. Accordingly, we affirm the order dismissing the petition.

*Henson v. State,* 2006WL3231512 (Ark.,2006) (an unpublished opinion).

Our inquiry is whether either of the two claims advanced in state court amount to "cause" for the petitioner's failure to adequately present grounds three, four, and five in state court. We find Mr. Henson fails to establish cause for his procedural lapse in state court. His arguments simply do not reflect that he was impeded from his efforts to comply with the state procedural rules. As a result, we find that grounds three, four, and five are not properly before this Court due to the procedural failure of the petitioner, and these grounds should be dismissed on that basis.[1]

We now address claims one and two. The first claim of Mr. Henson is that the trial court erred in finding that the evidence was sufficient. This claim was advanced on direct appeal to the Arkansas Court of Appeals:

> Appellant Billy Joe Henson was charged with theft by receiving following an

---

[1] Even if these claims were properly before the Court, a careful reading of the trial transcript does not support any of the three claims of ineffective assistance of counsel. To the contrary, the petitioner's attorney zealously defended Mr. Henson despite circumstances, including the four prior felony convictions, which presented significant challenges for defense counsel.

incident in which he and his female companion allegedly attempted to use someone else's credit card to purchase over $100 in merchandise at an Exxon gas station (Exxon). The jury found Henson guilty of theft by receiving and sentenced him to twenty years' imprisonment as an habitual offender. Henson appeals, alleging that the trial court erred in denying his motion for directed verdict because the State failed to prove that he committed the crime of theft by receiving, and that the trial court erred in refusing to allow him to testify on his own behalf after both sides had rested but before jury instructions were administered. We affirm on both issues.

The evidence, viewed in the light most favorable to the verdict, reveals the following. On August 23, 2003, Henson and his companion Phyllis Dendy entered an Exxon and, after browsing for a few minutes, placed over $100 in merchandise at the counter next to the cash register. When Henson presented a credit card as payment, the cashier, Ella Davis, following store policy, asked Henson to provide photographic identification. Davis testified that Henson told her that he did not have any identification because it had recently been stolen and added that the credit card belonged to his companion. When pressed, Dendy also claimed that she did not have any identification because it had been stolen. Davis refused to complete the sale. Davis testified that Henson and Dendy said some curse words and then left, indicating that they would just go somewhere else. She testified that she saw the two get into a white or gray older model car and drive off.

Davis reported the incident to her manager, who called the North Little Rock Police to report possible credit-card fraud. Officer Forney responded to the scene and viewed a videotape of the incident; he then radioed a description of the suspects and their vehicle to Patrol Officer Hart. Officer Hart spotted a vehicle matching the one from Davis's description in the parking lot of a nearby Kroger grocery store (Kroger). Officer Hart then informed Officer Forney that he had found someone fitting the description of the male suspect walking out of Kroger. While Officer Forney questioned this person, Officer Hart went to observe if anyone approached the car. Officer Forney informed the suspect, who identified himself as Billy Joe Henson, that he had been stopped because he matched the description of someone suspected of credit-card fraud. After Officer Forney ran Henson's information through the computer and discovered that there were no active warrants on Henson, he allowed Henson to leave but stated that he would keep his name and information for the future investigation.

Afterwards, Officer Hart radioed to Officer Forney that there was a woman sitting in the suspect vehicle. Both officers went to question the woman, who identified herself as Phyllis Dendy and voluntarily handed over a credit card in the name of Alyssa Loyd, as well as several receipts, including one from Books-A-Million, which was located very close to both the Exxon and the Kroger. At that time, the

officers administered her Miranda rights and placed her under arrest; they also arrested Henson as he came toward the car.

At the trial, Loyd testified that she worked as a "brewista" at the Books-A-Million café and that she was unaware that she did not have her credit card until police called her later that day. She stated that she kept her card in a folio on her key ring; that she usually kept the key ring under the counter; that things were very busy on the day in question, so she inadvertently placed the key ring on top of the counter within reach of customers; and that she had never given anyone permission to use her credit cards. Davis testified that, although she could not identify him in a photo lineup shortly after the incident, she was certain that Henson was the man who handed her Loyd's credit card.

At the close of the State's case, Henson moved for a directed verdict, asserting that the State did not prove that he had committed the crime of theft by receiving; he contended that he did not give Davis the card, that he never had possession of the card, and that the videotape did not show him with possession of the card. The motion was denied. Henson's counsel advised the trial court that Henson had "just blurted out that he wanted to testify," to which the trial court responded that he wanted an answer and if Henson was not going to testify "then I want that on the record here at the bench." The following exchange then took place after Henson conferred briefly with his counsel:

MR. PADILLA: After discussing our options, my client has decided that he chooses not to take the stand at this time.

THE COURT: Is that correct, Mr. Henson, that you choose to---

HENSON: Yes, but I'd like for the jury to be instructed as to my rights when I testify.

THE COURT: Well, I have a jury instruction for that. They will be instructed as to that. But that is correct then, it is your decision to not testify?

HENSON: Yes sir.

Defense counsel then rested and renewed his motion for a directed verdict, which was again denied. Counsel for both sides next conferred in the judge's chambers about the proper jury instructions. The following bench conference then occurred:

MR. PADILLA: My client has decided at this time to disregard his counsel's advice and he's decided that he wishes to take the stand in his own defense and testify. I've urged him not to, and he had changed his mind in the course of the last few minutes in chambers and chooses to take the stand.

THE COURT: Well, I'll make it easy on this. Depending upon what the jury's conclusion is, he may have the opportunity in the next phase. But all sides have rested and we're done, and we're going on with the jury instructions on this phase. Okay? You may all be seated.

HENSON: So, I am refused to testify.

MR. PADILLA: You are not going to be allowed to testify because both sides have rested.

Jury instructions were then read and closing arguments were presented. The jury convicted Henson of theft by receiving and sentenced him to twenty years' imprisonment as an habitual offender; this appeal ensued.

Henson first argues that the court erred in denying his motions for directed verdict because the State failed to meet its burden of proving that he committed the crime of theft by receiving. A motion for directed verdict is viewed as a challenge to the sufficiency of the evidence. *Watson v. State,* --- Ark. ----, --- S.W.3d ---- (June 24, 2004). In reviewing a challenge to the sufficiency of the evidence, the appellate court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict, affirming the conviction only if substantial evidence exists to support it. *Id.* Substantial evidence is evidence of adequate force and character that will, with reasonable certainty, compel a conclusion one way or the other, without resorting to either speculation or conjecture. *Id.*

In order to commit the crime of theft by receiving, a person has to receive, retain, or dispose of stolen property of another person, knowing that it was stolen or having good reason to believe that it was stolen. Ark.Code Ann. § 5-36-106 (Supp.2003). A person is an accomplice in the commission of a crime if, with the purpose of promoting or facilitating the commission of an offense, he: "(1) [s]olicits, advises, encourages, or coerces the other person to commit it; or (2)[a]ids, agrees to aid, or attempts to aid the other person in planning or committing it; or (3)[h]aving a legal duty to prevent the commission of the offense, fails to make proper effort to do so." Ark.Code Ann. § 5-2-403 (Repl.1997). A person does not commit an offense unless he acts with a culpable mental state with respect to each element of the offense that requires a culpable mental state. Ark.Code Ann. § 5-2-204(b) (Repl.1997). Theft by receiving requires that the defendant act "knowingly," meaning that the defendant is aware of his conduct or the attendant circumstances. Ark.Code Ann. § 5-2-202(2) (Repl.1997). Accomplice liability requires "purposeful" action, which occurs when it is the defendant's conscious object to engage in a certain conduct or to

cause a certain result. Ark.Code Ann. § 5-2-202(1).

The State argues that while Henson made timely directed-verdict motions, he only argued that there was insufficient proof that the property was recently stolen and that he acted as an accomplice; and therefore, his argument that the State failed to show that he acted with a knowing mental state is not preserved because this court does not consider arguments that are made for the first time on appeal. *Morris v. State,* 86 Ark.App. 78, 161 S.W.3d 314 (2004).

In this case, the theory of accomplice liability was implicated. One is an accomplice where he renders the requisite aid or encouragement to the principal with regard to the offense at issue. *Cook v. State,* 350 Ark. 398, 86 S.W.3d 916 (2002). When two people assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. *Id.* One cannot disclaim accomplice liability simply because he did not personally take part in every act that went to make up the crime as a whole. *Id.*

Here, the State provided sufficient evidence to prove that Henson was at least an accomplice in the crime of theft by receiving. While Henson claims that the State did not prove that the credit card was recently stolen, Loyd testified that she normally kept her credit card in an ID folder attached to her key ring, that her card was indeed missing on the date in question when the police called to inform her that they had recovered her credit card, and that she had given no one permission to possess or use her card. The jury could have inferred from her testimony that the card was recently stolen. In addition, Davis testified that it was Henson who presented her with the credit card and that Henson indicated that he and Dendy were "together." The evidence also established that Dendy was in the Books-A-Million where Loyd worked around the time that the credit card was stolen, that Henson presented that credit card at the Exxon a short time later, and that he and Dendy tried to purchase over $100 in merchandise. While much of the evidence against Henson is circumstantial because it was Dendy who was placed in proximity to the theft and who actually surrendered the card to police, circumstantial evidence can provide the basis to support a conviction if it is consistent with defendant's guilt and inconsistent with any other reasonable conclusion, and such a determination is a question of fact for the fact-finder to determine. *Von Holt v. State,* 85 Ark.App. 308, 151 S.W.3d 1 (2004).

Henson also argues that Davis was not a credible witness and that the jury should not have believed her in light of the fact that she could not identify Henson from a photo line-up soon after the incident and because the videotape did not appear to show Henson actually handing the credit card to Davis. Davis testified that Henson was the man who handed her Loyd's credit card on the day in question. Also, it was undisputed that the videotape was not clear by the time the case was

11

> tried; and while the tape did not conclusively show that Henson handed the credit card to Davis, neither did it show Dendy handing the credit card to Davis. The tape essentially provided inconclusive evidence, and the jury, as the trier of fact, was entitled to believe all or part of any witness's testimony and to resolve any conflicts in testimony and inconsistencies in evidence. *Brown v. State,* 82 Ark.App. 61, 110 S.W.3d 293 (2003).
>
> While the State asserts that the argument that it did not properly prove Henson had the requisite state of mind was not properly preserved, the issue can also be resolved in its favor. The theft-by-receiving statute states that a person's unexplained possession or control of recently stolen property gives rise to the presumption that he knows or believes the property to be stolen. Ark.Code Ann. § 5-36-106(c) (Supp.2003). In this case, Henson offered no explanation as to why he was in possession of a credit card that did not belong to him. In sum, looking at the evidence in a light most favorable to the verdict, the verdict is supported by substantial evidence and should be affirmed.

*Henson v. State*, 93 Ark. App. 163 (2006).

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
>     . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

We have carefully reviewed the trial transcript, and find the petitioner has not demonstrated either (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court."  To the contrary, the evidence adduced at trial was sufficient to support the verdict, and the first claim for relief is without merit.

The second claim of Mr. Henson is that the trial court erred in denying petitioner the right to testify in his own behalf.  This claim, like the first ground for relief, was addressed by the state appellate court:

> Henson next argues that the trial court violated his constitutional rights when it refused to let him testify. A defendant in a criminal case has the right to testify in his own behalf under the Firth, Sixth, and Fourteenth Amendments of the United States Constitution. *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The right to present relevant testimony is not without limitation and may, in appropriate cases, bow to accommodate other legislative interests in the criminal trial process; however, restrictions on the defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve. *Id.; see also Whitfield v. Bowersox,* 324 F.3d 1009 (8th Cir.2003) (holding that the defendant's right to testify is circumscribed by procedural and evidentiary rules, when the rules are neither arbitrary nor disproportionate to the right). Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive this right; in addition this waiver should be made voluntarily and knowingly. *United States v. Bernloehr,* 833 F.2d 749 (8th Cir.1987). A voluntary and knowing waiver of the right to testify may exist where the defendant remained silent after counsel rested. *Whitfield, supra; see also United States v. Kamerud,* 326 F.3d 1008 (8th Cir.2003) (holding that if a defendant desires to exercise his constitutional right to testify, he must act affirmatively and express to the trial court his desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred). The right to testify must be exercised at the evidence-taking stage of the trial, and once this stage has been closed, the trial court has discretion over whether to reopen for submission of additional testimony. *United States v. Jones,* 880 F.2d 55 (8th Cir.1989). This

rule promotes both fairness and order-interests that are crucial to the legitimacy of the trial process. *Id.*

In *United States v. Stewart,* 20 F.3d 911 (8th Cir.1994), the Court of Appeals for the Eighth Circuit held that a defendant's right to testify is not unqualified and must, at times, yield to the interests of order and fairness and found that Stewart failed to assert his desire to testify in a timely fashion where he had unequivocally stated his desire not to introduce evidence and the court had informed the jury that it would next hear closing statements. The circuit court found that the trial judge did not abuse his discretion in refusing to allow Stewart to testify, particularly in light of Stewart's previous numerous efforts to delay and disrupt the trial. *Id.*

In *Jones, supra,* the court found no abuse of discretion where the trial judge refused to allow defendant to testify where he did not state his intention to do so until after the close of evidence although he was aware of his rights, and where by the time the request to testify was made, the parties had prepared jury instructions and summations and potential witnesses had been released and were unavailable.

In this instance Henson should just as well have been allowed to testify. Certainly, our supreme court has held that a trial court has the discretion to allow the State to reopen its case to provide a missing element of its case after it has rested and the defendant has made a motion for directed verdict. *See Holloway v. State,* 312 Ark. 306, 849 S.W.2d 473 (1993) (allowing State to reopen case after defendant's motion for directed verdict, in order for six victims to testify and identify defendant as the culprit); *Cameron v. State,* 278 Ark. 357, 645 S.W.2d 943 (1983) (stating that it is "inconsequential whether flaws are recognized first by the State or by the defendant" and finding that defendant was not prejudiced by trial court's permitting State to reopen case after defendant's motion for directed verdict). However, this court cannot say that the trial court abused its discretion in refusing to allow him to do so. Here, although Henson's response was qualified and somewhat inconsistent when the trial court first questioned him concerning his desire to testify, he responded affirmatively when the trial court again asked if it was his decision not to testify. Henson further failed to object after his attorney then rested without calling any witnesses. Henson requested that he be able to testify only after counsel had conferred in chambers to prepare jury instructions, at which point Henson's attorney stated that Henson had "changed his mind in the course of the last few minutes and chooses to take the stand."

The trial judge noted that Henson would have an opportunity to testify in the penalty phase but ruled that because both sides had rested, the trial would proceed. From these facts, we cannot say that the trial judge abused his discretion, where Henson clearly and on the record stated his intention not to testify in response to a direct question put to him by the trial court at the close of the evidence.

*Henson v. State*, 94 Ark. App. 163 (2006).

We analyze this claim, as with ground one, by judging if the state court ruling violated established Federal law or if the decision was an unreasonable determination of the facts in light of the evidence presented in the State court. 28 U.S.C. § 2254(d)(1), (2). The state appellate court allowed that the trial court was imbued with a good deal of discretion in ruling on whether the petitioner should have been allowed to testify. The state appellate court found no abuse of this discretion, and we find this ruling is not unreasonable under the circumstances. This finding, coupled with the absence of any violation of federal case law, is fatal to the petitioner's second claim for relief.

In summary, we find no merit in grounds one and two. Grounds three, four, and five are not properly before this Court due to the procedural default of the petitioner, and these grounds should be dismissed on that basis. For the foregoing reasons, we recommend that the petition for writ of habeas corpus be dismissed and the relief requested be denied.

IT IS SO ORDERED this __16__ day of May, 2007.

_____
UNITED STATES MAGISTRATE JUDGE